IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDRICK BENARD MOSLEY,           )
AIS #233819,                       )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CASE NO. 2:13-CV-532-WHA
                                   )                (WO)
                                   )
KENNETH SCONYERS, et al.,          )
                                   )
        Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Fredrick
Benard Mosley ("Mosley"), a state inmate.  On September 12, 2013, the court dismissed
various claims and defendants from this case.  *Doc. No. 22*.  With respect to the claims
currently before the court, Mosley challenges the constitutionality of force used against
him on July 10, 2013, by officers at the Easterling Correctional Facility ("Easterling"),
while obtaining his fingerprints, and the failure of other officers to protect him from this
alleged unconstitutional use of force.  *Compl. - Doc. No. 1* at 3 (The defendants "twisted
my neck back to the side, trying [to] pull [out] my eyes and ears by submissional moves. .
. [and] my [ankle] was hurt.").  Mosley also alleges that the nurse who examined him on
this date acted with deliberate indifference to his injuries.  Finally, Mosley challenges the
constitutionality of the taking of his fingerprints.  The defendants remaining in this cause
of action are Warden Kenneth Sconyers, Capt. Michael Strickland, Capt. Nathaniel

Lawson, Lt. Phelix Woods, Officer Patricia Liptrot, Officer Ken Brook, Officer Rodney Wilson and Nurse Dianne Bowman.[1]  Mosley seeks a declaratory judgment and monetary damages for the alleged violations of his constitutional rights.

The defendants filed answers, special reports and supporting evidentiary materials, including affidavits, certified prison records, a verified DVD and certified medical records, addressing Mosley's claims for relief.  In these documents, the defendants deny they acted in violation of Mosley's constitutional rights.  After receipt of the defendants' special reports, the court issued an order directing Mosley to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials.  *Doc. No. 35* at 2.  The order specifically cautioned Mosley that "**unless within fifteen (15) days form the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  *Id*. 2-3.  Pursuant to this order, the court deems it appropriate to treat the defendants' reports as motions for summary judgment.  Thus, this case is now pending on the defendants' motions for summary judgment.

---

[1]Mosley initially identifies Nurse Bowman as "Nurse Bowen" but thereafter does not dispute that this defendant's true last name is Bowman.  For purposes of this Recommendation, the court will utilize the correct name for this defendant.  Any reference herein to Nurse Bowman is therefore a reference to Nurse Bowen.

Upon consideration of these motions, the evidentiary materials filed in support thereof, including the DVD, the sworn complaint and the plaintiff's response to the reports, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir.

2014).   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).   To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed R. Civ. P. 56(e).   "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.   "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d

1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary

judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a

requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Mosley has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. DISCUSSION

### A. Absolute Immunity

With respect to those claims lodged against the correctional defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d

67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendants Sconyers, Strickland, Lawson, Woods, Liptrot, Brooks and Wilson are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Mosley*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Relevant Facts

On July 10, 2013, the defendants attempted to obtain Mosley's fingerprints pursuant to a directive issued by the Central Records Office of the Alabama Department of Corrections.  *See Exh. 2 to the Correctional Defs.' Special Report - Doc. No. 32-2* at 21. Mosley refused to provide his fingerprints despite being repeatedly ordered to do so by several correctional officials, including defendants Sonyers, Strickland, Woods, Logan, and Liptrot.  The officers then counseled Mosely on the need to voluntarily submit to providing his fingerprints and continued to order him to do so, but these efforts did not persuade Mosley to comply with their orders.  Warden Sconyers therefore advised defendants Strickland, Lawson, Logan, Woods, Liptrot, Wilson, and Brook "to restrain

Inmate Mosley to obtain his fingerprints.  Lieutenant Logan retrieved the video camera to record the Use of Force concerning Inmate Mosley.  Lieutenant Logan turned on the video camera [and recorded the fingerprint process]."  *Id*. at 2.  At the beginning of the video recording, Warden Sconyers once more ordered Mosley to submit to providing his fingerprints and Mosley again refused this order.  The Use of Force Investigative Report details the force used against Mosley and the recitation of facts contained in this report are fully corroborated by the DVD.  The relevant portion of this report reads as follows:

> Inmate Mosley was restrained with leg irons and was handcuffed to the front in order to facilitate the collection of his prints.  Inmate Mosley was escorted to the Segregation Conference room and assisted to a kneeling position by Captain Lawson and Lt. Phelix Woods attempted to position Mosley's hands so that Officer Patricia Liptrot could collect his prints.  Captain Strickland held inmate Mosley's feet.  Inmate Mosley refused to cooperate and clinched his fists.  Officer Kenneth Brook then assumed control of Inmate Mosley's feet.  Captain Strickland applied touch pressure to inmate Mosley's mandibular nerve while giving Inmate Mosley loud verbal commands to open his fists.  Inmate Mosley opened his clinched fists, and Officer Strickland ceased the touch pressure.  Officer Liptrot, with the assistance of Officer Rodney Wilson, [eventually] collected the needed fingerprints.  All use of force ceased.  Inmate Mosley was released, assisted to his feet by Captain Lawson and Lt. Woods, and escorted to the Health Care Unit for a medical examination.  No additional force was used.[2]

*Id*. at 21.

The DVD recording followed Mosley as officers escorted him to the health care unit for examination.  During his walk across the yard at Easterling, Mosley did not exhibit a discernible limp nor injury to his ankle.  Despite being in ankle chains, the DVD shows

---

[2]As evidenced by the DVD, the initial set of fingerprints obtained from Mosley were unusable due to the fact that Mosley refused to fully open his hands and continued to resist the officers while being fingerprinted.  It was only after officers sought a second set of fingerprints that Mosley was somewhat compliant in the taking of his fingerprints.

that Mosley's gait is normal and he voices no complaints of ankle pain while making the walk to the health care unit.  In addition, the photographs taken of Mosley immediately after the incident do not show any noticeable swelling to either of his ankles.  *Id*. at 11. Finally, the only injuries noted by Nurse Bowman upon her examination of Mosley were "a very small spot on lower lip almost at crease . . . and a very small red spot inside [his] lower lip."  *Id*. at 7.  She observed "no other marks or bruises on [his] body."  *Id*.  Nurse Bowman thoroughly assessed Mosley's condition, cleaned his injuries, determined no further treatment was necessary, and released him to the custody of correctional officers. *Id*.

Mosley received a disciplinary for his failure to obey the orders issued to him regarding the collection of his fingerprints.  *Exh. 2 to the Correctional Defs.' Special Report - Doc. No. 32-2* at 13-16.  Mosley was found guilty of the charged offense.  *Id*. at 15.   He challenged the constitutionality of this disciplinary on several grounds in *Mosley v. Borders, et al.*, 2:14-CV-549-MHT-GMB (M.D. Ala. 2016), and this court decided those claims adversely to Mosley.

## C.  Excessive Force

Mosley alleges that the defendants used excessive force to gain his fingerprints.  The defendants maintain that they used only the force necessary to maintain control of Mosley and protect everyone involved.  The defendants assert that due to Mosley's refusal of several orders to voluntarily provide his fingerprints, the only option remaining to them

was a calculated use of force to obtain the fingerprints.  They further argue that the amount of force used was reasonable under the circumstances with which they were presented.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.* (internal quotations omitted).  To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Sims*, 230 F.3d at 21.  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Hudson*, 503 U.S. at 8.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the

inmate does not suffer serious injury." *Id.* at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

"'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]" *Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry'

is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct.1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)." *Bowden*, 576 F. App'x at 953.

Mosley concedes that he repeatedly denied orders to voluntarily provide his fingerprints to correctional officials.  In the beginning of the DVD recording, Warden Sconyers advises Mosley that he is required by law to obtain his fingerprints and provides Mosley one last opportunity to voluntarily comply with his orders, an opportunity which Mosley refuses.  When officers attempted to obtain his fingerprints by the use of force, Mosley claims that his neck was pulled and twisted to the side in an effort to cause his death and alleges that the officers attempted to pull out his eyes and ears.  *Compl. Doc. No. 1* at 3.  In the video, as officers initially place Mosley on the floor to obtain his fingerprints at a makeshift stand, Mosley repeatedly states "he choking me" when an officer merely places his hand against the side of Mosley's head/neck to stem his resistance.  The video evidence demonstrates that Mosely initially continues to resist the officers by balling up his fists and refusing to open his hands, despite several orders to do so.  The officers then apply the amount of force necessary to overcome Mosley's resistance and open his hands for the purpose of obtaining his finger prints.  The officers are positioned in a manner to secure Mosley and ensure their safety.  At no time does any officer attempt to pull out

Mosley's eyes or remove his ears, nor is Mosley choked.  Mosley's version of events is simply untenable given the video evidence.

The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury [or trier of fact] could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-54 (11th Cir. 2013) (same).  Where, as here, a plaintiff's "version of events is so utterly discredited by the record that no reasonable jury [or trier of fact] could . . . believe[] him[,]" the Supreme Court admonished that the lower court addressing the claims "should not [rely] on such visible fiction [but] should . . . view[] the facts in the light depicted by the videotape."  *Id.* at 380-381.

Upon review of the DVD and after examining the circumstances of this case in accordance with the relevant factors, it is clear that the defendants did not subject Mosley to the use of excessive force as prohibited by the Eighth Amendment.  Instead, the credible and objective evidence demonstrates that there was a need for the exercise of force due to Mosley's refusal to comply with several orders to voluntarily provide his fingerprints.  This evidence also shows that the officers used a reasonable amount of force against Mosley to obtain his fingerprints.  Specifically, the DVD clearly shows that the force utilized throughout the incident to restrain Mosely and gain his compliance was minimal and applied in a good-faith effort to maintain control of the inmate and secure the safety of the

officers involved.  Finally, the evidence establishes that the defendants did not apply force in a sadistic or malicious manner.  The defendants are therefore entitled to summary judgment on the excessive force claim.

### D.  Failure to Protect

Insofar as Mosley alleges that Warden Sconyers and/or other officers failed to intervene to protect him from the use of excessive force, he is likewise entitled to no relief. The Eleventh Circuit has recognized that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance."  *Skrtich*, 280 F.3d at 1300-1301. However, for liability to attach regarding the failure of a correctional official to intervene in another officer's use of force, "there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *see also Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006).  In this case, there was no duty to intervene because there was no unconstitutional use of force.  As such, summary judgment is due to be granted in favor of the defendants.

### E.  Taking of Fingerprints

Mosley complains that the defendants took his fingerprints without a court order. *Attachment to Compl. - Doc. No. 1-1* at 5.  "It is . . . considered 'elementary that a person in lawful custody may be required to submit to . . . fingerprinting[.]'"  *United States v. Olivares-Rangel*, 458 F.3d 1104, 1113 (10th Cir. 2006) (citation omitted); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1188-1189 (11th Cir. 2009) (Law enforcement officials

"can obtain both photographs and fingerprints without conducting a search under the Fourth Amendment[,]" and, thus, in so doing do not violate the rights secured under such Amendment.). Consequently, the Fourth Amendment right to be free from unreasonable searches and seizures does not protect a convicted inmate from collection of his fingerprints. *See Wilson v. Collins*, 517 F.3d 421, 426-427 (6th Cir. 2008) (Inmate's Fourth Amendment challenge to Ohio law requiring convicted felons to provide DNA samples, a somewhat more intrusive procedure than obtaining fingerprints, entitled him to no relief because considering the minimal intrusion of swabbing saliva, the government's compelling interest in collecting the DNA sample outweighed the plaintiff's "greatly diminished privacy interests as a convicted felon."); *United States v. Sczubelek*, 402 F.3d 175, 184 (3d Cir. 2005) ("After . . . conviction of a felony, [an offender's] identity became a matter of compelling interest to the government, and [the] marks of identification [taken while in custody], the fingerprints and the photographs, bec[o]me a permanent record. [The offender] can no longer assert a privacy interest in these means of identification."); *United States v. Kincaid*, 379 F.3d 813, 837 n.32 (9th 2004) ("Those who have suffered a lawful conviction lose an interest in their identity to a degree well-recognized as sufficient to entitle the government permanently to maintain a verifiable record of their identity."); *Groceman v. United States Dep't of Justice*, 354 F.3d 411, 413-414 (2004) ("[P]ersons incarcerated after conviction retain no constitutional privacy interest against their correct identification."); *Jones v. Murray*, 962 F.2d 302,  306 (4th Cir. 1992) (Fourth Amendment protection from fingerprinting does not apply to "those lawfully confined to the custody of

the state.").  Similarly, it has long been held that fingerprints are not protected by the Fifth

Amendment right against self-incrimination.  *United States v. Dionisio*, 410 U.S. 1, 6-7, 93

S.Ct. 764, 767-768 (1973).  This claim therefore provides no basis for relief to Mosley.

## F.  Medical Treatment

Mosley challenges the medical treatment provided to him by Nurse Bowman

immediately after the challenged use of force.  Nurse Bowman avers that she did not act

with deliberate indifference to any serious medical need suffered by Mosley.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate

must, at a minimum, show that the defendant acted with deliberate indifference to a serious

medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254

(11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*,

871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th

Cir.1986).[3]   Specifically, medical personnel may not subject an inmate to "acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th

Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must

establish "not merely the knowledge of a condition, but the knowledge of necessary

---

[3]Mosley was a convicted inmate incarcerated at the Easterling Correctional Facility during the period of time relevant to this complaint.  Thus, this case is not affected by the decision of the United States Supreme Court in *Kingsley v. Hendrickson*, --- U.S. ---, ---, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (holding that "objectively reasonable" standard of review is applicable to pretrial detainee's excessive force claim brought under the Fourteenth Amendment).

treatment coupled with a refusal to treat or a delay in [the acknowledged necessary]

treatment."

> That medical malpractice - negligence by a physician [or nurse] - is
> insufficient to form the basis of a claim for deliberate indifference is well
> settled.  *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50
> L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).
> Instead, something more must be shown.  Evidence must support a
> conclusion that a prison [medical care provider's] harmful acts were
> intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114
> S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d
> 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent
> of recklessly disregarding substantial risk of serious harm to inmate); *Adams,*
> 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence
> to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth
> Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that
> Supreme Court has defined "deliberate indifference" as requiring more than
> mere negligence and has adopted a "subjective recklessness" standard from
> criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating
> "deliberate indifference" is synonym for intentional or reckless conduct, and
> that "reckless" conduct describes conduct so dangerous that deliberate nature
> can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . .,

Plaintiff[] must show:  (1) a serious medical need; (2) the defendant['s] deliberate

indifference to that need; and (3) causation between that indifference and the plaintiff's

injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When

seeking relief based on deliberate indifference, an inmate is required to establish "an

objectively serious need, an objectively insufficient response to that need, subjective

awareness of facts signaling the need and an actual inference of required action from those

facts."  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the

official must know of and then disregard an excessive risk to the prisoner).  Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting  *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'"  *Taylor*, 221 F.3d at 1258 (internal citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk

to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction

of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, . . . the Supreme Court has . . . emphasized that not 'every claim
> by a prisoner that he has not received adequate medical treatment states a
> violation of the Eighth Amendment.'  *Estelle,* 429 U.S. at 105, 97 S.Ct. at
> 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth
> amendment only when it is 'so grossly incompetent, inadequate, or excessive
> as to shock the conscience or to be intolerable to fundamental fairness.'
> *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or
> malpractice do not rise to the level of constitutional violations.  *See Estelle,*
> 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.'); *Mandel*,
> 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient'
> to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere
> medical malpractice does not constitute deliberate indifference).  Nor does a
> simple difference in medical opinion between the prison's medical staff and
> the inmate as to the latter's diagnosis or course of treatment support a claim
> of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing
> *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation

and internal quotations omitted) (To show deliberate indifference, the plaintiff must

demonstrate a serious medical need and then must establish that the defendant's response

to the need was more than "merely accidental inadequacy, negligence in diagnosis or

treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle*

teaches, whether government actors should have employed additional diagnostic

techniques or forms of treatment 'is a classic example of a matter for medical judgment'

and therefore not an appropriate basis for grounding liability under the Eighth

Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x. 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).

An official also acts with deliberate indifference when she intentionally delays providing an inmate with access to medical treatment, knowing the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186-87, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994). "In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill*, 40 F.3d at 1186–87. A medical need is considered serious when delay in treatment results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth Cty. Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical

treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

Mosley complains that Nurse Bowman violated his constitutional right to medical treatment when he appeared at the Easterling Health Care Unit on July 10, 2013 for treatment after officers used force against him to obtain his fingerprints. Mosley, however, has presented no medical evidence establishing any detrimental effect suffered due to the actions of the defendant.

Nurse Bowman asserts that Mosley fails to identify any serious medical need he suffered on the date at issue for which he did not receive treatment. *Def. Bowman's Special Report - Doc. No. 23* at 7. Moreover, she adamantly denies acting with deliberate indifference to a serious medical need suffered by Mosley. In support of this assertion, Nurse Bowman maintains and the medical records demonstrate that she provided treatment to Mosley for the minor injuries she observed on July 10, 2013. *Exh. 1 to Def. Bowman's Special Report - Doc. No. 23-1* at 2; *Exh. A to Def. Bowman's Special Report - Doc. No. 23-3* at 5. It is likewise clear that Nurse Bowman did not at any time thereafter preclude Mosley from filing a medical request form seeking additional treatment or prevent him from receiving treatment upon completion of a medical request form.

As an initial matter, it is highly questionable whether Mosley suffered a serious medical need on the date he alleges a denial of medical treatment. Nevertheless, even assuming the existence of a serious medical need, there is no evidence that defendant Bowman acted with deliberate indifference to that need.

The evidentiary materials filed by Nurse Bowman address the claims made by Mosley alleging a lack of adequate medical treatment. A thorough review of these documents demonstrates that the affidavit submitted by Nurse Bowan with respect to the material facts are corroborated by the contemporaneously compiled objective medical records. In her affidavit, Nurse Bowman addresses the claims lodged against her as follows:

> It is my understanding from reading Mr. Mosley's Complaint that he is dissatisfied with the level of care afforded [to] him at Easterling by me on July 10, 2013. Specifically, Mr. Mosley claims I did not provide him with adequate care following an alleged altercation with the correctional staff on July 10, 2013.

> Correctional officers escorted Mr. Mosley to the health care unit for a physical evaluation following an alleged altercation on July 10, 2013. During this evaluation, I conducted a physical examination of Mr. Mosley. Mr. Mosley appeared ambulatory and alert and oriented to person, place and time. Mr. Mosley suffered a very small abrasion to his lower lip and another very small abrasion to the inside of his lower lip. I cleaned these two abrasions and instructed him to submit a sick call request form if he required any further medical attention. Mr. Mosley did not exhibit any other marks, bruises or injuries on his body. Moreover, Mr. Mosley did not voice any complaints regarding his eyes or ankles. Following this evaluation, Mr. Mosley did not voice any additional complaints and the correctional officers escorted him out of the health care unit.

> Mr. Mosley did not return to the health care unit until August 6, 2013, when, again, correctional officers escorted Mr. Mosley to the health care unit for a physical evaluation. During this evaluation, Mr. Mosley did not seek any additional care regarding his small lower lip abrasions, voice any complaints or request any specific medical care for any injury [related to the July 10, 2013 incident]. Notably, Mr. Mosley did not exhibit any injuries to his body and he denied experiencing any pain at this evaluation.

> Since the August 6, 2013, evaluation, Mr. Mosley has not submitted a sick call request form, voiced a medical complaint or otherwise sought medical care or treatment.

> During Mr. Mosley's incarceration at Easterling, I did not and have not at any time ignored any request by him for medical care or treatment. I did not and have not deliberately ignored any requests [or] complaints made

> by Mr. Mosley or interfere[d] in any way with the provision of medical care to Mr. Mosley at any time. If Mr. Mosley voiced a medical complaint to me, I would have evaluated his condition under the nursing protocols and provided the necessary medical care at that time or referred Mr. Mosley to an advanced level medical provider. I did not take any action which caused Mr. Mosley to experience any unnecessary pain and/or suffering.

*Exh. 1 to the Def. Bowman's Special Report - Doc. No. 23-1* at 2-3 (paragraph numbering and parenthetical references to medical records omitted).

Under the circumstances of this case, the court concludes that the actions of defendant Bowman did not violate Mosley's constitutional rights. Specifically, Nurse Bowman did not act in a manner which was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. It is likewise clear that the allegations presented by Mosley simply fail to establish deliberate indifference to any serious medical need. *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

The objective evidence indicates that Mosley received medical care for his injuries and it is likewise evident that Nurse Bowman rendered treatment to Mosley in accordance with her professional judgment. In addition, Mosley has failed to present any evidence

which indicates Nurse Bowman knew that the manner in which she provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that Nurse Bowman acted with deliberate indifference to any serious medical need experienced by Mosley. Consequently, summary judgment is due to be granted in favor of Nurse Bowman.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

It is further

ORDERED that on or before August 24, 2016 the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 10th day of August, 2016.


_____/s/   Wallace Capel, Jr._____
UNITED STATES MAGISTRATE JUDGE